In the Matter of the Appointment of a Committee of the Person and Property of HARRY BERMAN, an Alleged Incompetent Person. ALICE BERMAN, Appellant-Respondent; HARRY GROSSMAN et al., Respondents-Appellants.

First Department, April 30, 1964.

*Stephen A. Wise* for appellant-respondent.

*Philip J. Maron* of counsel (*Gray & Maron,* attorneys), for committee, respondent-appellant.

*Harry Grossman,* respondent-appellant in person.

*Lazarus Joseph,* commissioner in person.

BASTOW, J.  These appeals present questions as to the exercise of a proper judicial discretion by Special Term in the appointment of a joint committee of the person and property of an incompetent person and the several allowances made in the adjudication proceeding.

The incompetent is a man in his early seventies who has been twice married.  A son of the first marriage, Milton Berman, who resides in Florida, was appointed one member of the committee.  The second marriage was contracted in 1952 and there is one child thereof, now eight years of age.  The present wife is an active participant in this and other litigation involving the incompetent.

Happenings antecedent to the commencement of this proceeding have an important bearing on some of the issues here presented.  In early 1963 Mrs. Berman commenced a separation action against her husband.  In the course thereof the court appointed a special guardian for the husband.  The guardian so appointed was subsequently named special guardian in this incompetency proceeding and later the other member of the committee.

This cast of characters not unexpectedly had chosen sides before the institution of this proceeding with the son, Milton Berman, and the special guardian (now the committee) in one camp and Mrs. Berman and a brother of the incompetent con-

stituting the opposing faction. The usual bitterness of a matrimonial litigation has infected all participants.

The proceeding seeking inquiry as to competency was commenced on the petition of Milton Berman. Therein it was requested that the special guardian in the separation action be named to the same position in this proceeding in order, among other reasons, "to save time" and "conserve the assets" of the alleged incompetent. Such appointment was made and prior to the hearing the guardian filed an interim report containing the unusual finding that the alleged incompetent was "suffering from a severe paranoid psychosis." Thereafter a commission issued, a commissioner was named and a jury impaneled. The hearing was routine and was concluded in less than four hours. The jury found incompetency and fixed the value of the estate at $250,000 from which there was no income.

Thereafter by choice of the parties the proceeding became an adversary one. The son moved for confirmation of the jury's findings and the appointment of himself as committee. The special guardian in a report supported the candidacy of Milton Berman for the committeeship and opposed the appointment as committee of the incompetent's wife. The wife cross-moved to disaffirm the findings of the jury or in the alternative that she, a brother of the incompetent and a disinterested person be appointed committee. The lines of battle having been firmly drawn, all participants submitted voluminous affidavits and other documents containing bitter statements, criminations and recriminations. The special guardian in an affidavit characterized prior sworn statements made by the wife as being "figments of her imagination" and her cross motion as one more attempt "to throw a monkey-wrench into this proceeding." The court, as stated, eventually appointed as committee the son and the special guardian. We will hereafter return to this aspect of the proceeding.

At about the same time requests for allowances were made and passed upon as follows:

|  | Requested | Allowed |
|---|---|---|
| Attorneys for petitioner, Milton Berman | $10,000 | $7,500 |
| Attorneys for Mrs. Berman (who do not represent her on this appeal) | 17,500 | 2,500 |
| Special Guardian | 7,500 | 5,000 |
| Commissioner | 3,500 | 2,500 |

We view all of the allowances as grossly excessive. Moreover, two of them were made in violation of statute or rule fixing a maximum allowable amount. At the time the order herein was made section 1373 of the Civil Practice Act (now Mental Hygiene Law, § 101, subd. [9]) limited the amount that might be allowed in an adjudication proceeding to an adverse party to a sum not to exceed $50. The allowance to the former attorneys for Mrs. Berman should be reduced to that amount.

Considering next the allowance made to the commissioner. We find no merit to the jurisdictional issue raised by him. A copy of the notice of appeal was not served upon him but was timely filed with the clerk and served on the adverse parties. The defect is remediable (Civ. Prac. Act, § 107; CPLR 5520; *Huss* v. *Huss*, 14 A D 2d 874; *James Talcott, Inc.* v. *Schildhaus*, 2 A D 2d 669; *Matter of Donahue*, 193 Misc. 685). Inasmuch as the allowance was made to a court-appointed officer we conclude that the failure to serve the notice of appeal to be a defect not of substance. Pursuant to discretion vested in this court (CPLR 2201) it is disregarded (cf. *Lord* v. *Sherman*, 18 A D 2d 1029; *Matter of Academy Housing Corp.* v. *Parodi*, 7 A D 2d 725).

Prior to September 1, 1963 rule 288 of the Rules of Civil Practice provided that a commissioner was entitled to an allowance, to be fixed by the court, "not exceeding ten dollars for each day." On that date this rule was abrogated (CPLR 10002). At the same time provisions relating to adjudication of incompetency and appointment of a committee were transferred from the rules and the Civil Practice Act to new article 5-A of the Mental Hygiene Law. (L. 1962, ch. 310, § 280, as amd. by L. 1963, ch. 802.) Significantly, this article omits any provision fixing a maximum amount allowable to a commissioner.

The order under review was made prior to September 1, 1963 but the provisions of the new enactments are here applicable. (CPLR 10003.) While the repeal of a statute may not affect or impair accrued rights (General Construction Law, §§ 93, 94) remedial provisions, not inconsistent with, or prejudicial to, proceedings theretofore had, or to existing rights of parties should be applied in the interests of justice. (*Eagle-Picher Lead Co.* v. *Mansfield Paint Co.*, 201 App. Div. 223, 225.)

No party to this proceeding has a vested or accrued right to have the compensation of the commissioner continued at the maximum of $10 per day. That provision of the rule had its genesis in an amendment of 1877 to former General Practice Rule 71 (10B Gilbert-Bliss Civ. Prac. Acts, p. 252) and continued unchanged to the recent abrogation of the rule. The

gross unrealism of the maximum per diem allowance fixed nearly 90 years ago is apparent. Inasmuch as the legislation is ameliorative and the application thereof would not work an injustice to, or affect an accrued right of any party, we shall apply the existing statutory provision. Moreover, this court, without comment on this question, so held in *Matter of Mayer* (19 A D 2d 885). The allowance made to the commissioner, however, was excessive and we fix the sum of $300 as a proper amount.

We find no facts in the record to justify the allowances made to the attorneys for the petitioner and to the special guardian. The adjudication hearing was brief and uncomplicated. The activities that followed were part of the campaign of petitioner (supported by the special guardian) to be appointed committee. The estate of the incompetent should not be called upon to bear this expense. The allowances were excessive and should be reduced to the sum of $1,500 to the attorneys for the petitioner and $750 to the special guardian.

Lastly, we consider the composition of the committeeship. The primary consideration, of course, is the best interests of the incompetent. A secondary but not unimportant consideration is the infant son of the incompetent now living with the estranged wife. "Estates are not likely to be well served by custodians of whom some are at odds, others forced to take sides, and all intermittently distracted from primary duty by the discord". (*Matter of Marshall*, 15 A D 2d 310, 318.) One of the members of the committee, as has been stated, continues as special guardian in the matrimonial action. In the performance of the duties as such guardian he has become of necessity an adversary of the wife. His antithetical position in that continuing litigation should have eliminated him from consideration for appointment to the committeeship. His duties in the dual capacity as committee and as special guardian in the matrimonial action are in hopeless conflict. His activities in the matrimonial action have resulted in a degree of emotional involvement that prevents him from bringing to his duties as committee the disinterest, objectivity and impartiality that are essential to one serving in that capacity. Such attributes are especially here required where not only is the welfare of the incompetent to be considered but also that of the infant son residing with the adversary mother and wife.

For similar reasons the same conclusion is reached as to the continuance of the incompetent's son as one of the com-

mittee. The record is replete with bitter charges and counter-charges between son and stepmother. The committee, as presently constituted, forms a solid front to carry on its battle with the wife. The possibility is real that some of this discord and animosity will spill over and adversely affect the infant son of the incompetent, if not the incompetent himself.

Mrs. Berman sought and continues to seek appointment with another as committee. In view of the pending marital litigation and other facts her appointment would be inimical to the best interests of the incompetent.

The order entered July 10, 1963 should be modified on the law, the facts and in the exercise of discretion by reducing and fixing the several allowances as herein provided, vacating the appointment of the joint committee and remanding the proceeding to Special Term generally to appoint an independent committee, of evident neutrality. In view of the degree to which the situation has deteriorated it is particularly important that the person chosen be one who would be able to remain aloof from the antagonisms. As so modified, the order should be affirmed, with costs to all parties filing briefs payable out of the estate. Settle order on notice.

McNALLY, J. (dissenting). I dissent only as to the allowance to the commissioner. The order under review was made prior to September 1, 1963. It ignored the then existing rule 288 of the Rules of Civil Practice. Accordingly, I vote to reduce the allowance of the commissioner to the statutory fee of $10 under constraint of *Matter of Kalthoff* (298 N. Y. 458, 462).

BREITEL, J. P., STEVENS and STEUER, JJ., concur with BASTOW, J.; McNALLY, J., dissents in part, in opinion.

Order entered on July 10, 1963 modified on the law, the facts and in the exercise of discretion by reducing and fixing the several allowances as provided in the opinion of BASTOW, J., filed herein, vacating the appointment of the joint committee and remanding the proceeding to Special Term generally to appoint an independent committee, of evident neutrality. As so modified, the order is affirmed, with costs to all parties filing briefs payable out of the estate.

Settle order on notice.